**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

ERA L. CARTER,

        Plaintiff,

v.                                          ACTION NO. 4:13cv112

UNITED STATES OF AMERICA,

        Defendant.

## OPINION AND ORDER

This matter comes before the Court on a motion to exclude expert testimony against the plaintiff, Era L. Carter (hereinafter "Carter" or "Plaintiff"), and in favor of the defendant, the United States of America (hereinafter "the United States" or "Defendant"). Defendant filed the Motion in Limine to Exclude Expert Testimony on May 29, 2014. ECF No. 12. The Motion was referred to the undersigned on July 25, 2014. Based on the evidence presented, the undersigned ORDERS that Defendants' motion be GRANTED, and both experts be excluded.

### I. PROCEDURAL HISTORY

On August 21, 2013, Plaintiff filed this action against the United States of America, alleging that the negligence of an employee of the United States Navy caused the death of her husband, Floyd C. Carter, in violation of 28 U.S.C. § 2674. ECF No. 1. The complaint was answered on October 28, 2013. ECF No. 4. The instant motion to exclude expert testimony was filed by the United States on May 29, 2014. ECF No. 12. Plaintiff filed a Memorandum in Opposition on June 12, 2014 (ECF No. 14), and Defendant filed a reply on June 18, 2014 (ECF No. 15). Cross motions for summary judgment and partial summary judgment are also pending

in this case. ECF Nos. 16 & 19.

## II. FACTUAL BACKGROUND

A.   **Facts Pertaining to the Accident**

On the morning of August 17, 2012, Eric Harris, an employee of the United States Navy, was traveling on westbound Interstate 64 at the Jefferson Avenue Exit 255; he was late to catch a flight from the Newport News/Williamsburg International Airport and the Jefferson Avenue exit, which is the typical exit one uses to reach that airport, was blocked by construction cones. Compl. ¶¶ 9-10; Harris Dep. Tr. 13-16, ECF Nos. 14-1 & 17-1. The speed limit on that section of road is 60 miles per hour. Police Crash Report 1, ECF Nos. 13-9 & 14-4. He passed "a number of traffic signs, a Virginia State Police Vehicle, and numerous traffic cones and barrels" to warn that the collector lane for the Jefferson Avenue exit was closed. Pl.'s Opp'n To Def.'s Mot. in Limine to Excl. Expert Testimony (Pl.'s Opp'n) 2, ECF No. 14; Harris Dep. Tr. 17-18, ECF No. 14-1; Hatley Dep. Tr., ECF Nos. 13-6 & 14-3. Harris slowed his vehicle, checked his rearview mirror for oncoming traffic, and completely stopped his car in the right-hand through lane, to ask two road construction workers if he could pass through the blocked exit. Compl. ¶¶ 9-10; Harris Dep. Tr. 21-22, ECF No. 13-5. Harris did not "engage any hazard lights or any other warning signals." Pl.'s Opp'n 2, Harris Dep. Tr. 25, ECF No. 14-1.

Though there is some discrepancy in testimony regarding the conversation exchanged between the two road workers and Harris, it is clear Harris was asking if he could pass through the exit, and the two road workers were urging Harris to continue on the road. Henderson Dep. Tr. 12, ECF Nos. 13-7 & 14-2; Hatley Dep. Tr. 10-11, ECF Nos. 13-6 & 14-3. After Harris's car was stopped for a period of anywhere from twenty seconds to one minute, a motor vehicle driven by Floyd C. Carter collided with the rear of Harris's vehicle. Compl. ¶ 18; Harris Dep. Tr. 24-

25; Hatley Dep. Tr. 22-24; Henderson Dep. Tr. 46.  Neither of the two road workers witnessed any evidence of braking from Mr. Carter's vehicle.  Hatley Dep. Tr. 23-24; Henderson Dep. Tr. 48-49.

Mr. Carter sustained severe injuries and was transported via ambulance to Riverside Regional Memorial Hospital.  Compl. ¶ 18.  Mr. Carter never regained consciousness and on August 22, 2012, he was removed from life support and passed away.  *Id*.

**B.     The Experts**

On April 13, 2014, Plaintiff identified Ms. Mila Ruiz Tecala and Dr. Robert G. Pachella in her Identification of Expert Witnesses.  ECF No. 13-1.  Tecala, a clinical social worker, was identified as an expert in the field of grief and loss counseling, and Pachella, a professor at the University of Michigan, was identified as an expert in the fields of human perception, human performance, and human factors.  *Id*.  On May 14, 2014, Plaintiff produced to Defendant Rule 26 reports from Tecala and Pachella.  ECF Nos. 13-2 & 13-3.

### III. ANALYSIS

The admission of expert testimony is governed by Federal Rule of Evidence 702, which states that a witness who has been qualified as an expert may testify in the form of an opinion if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a basic fact in issue;" and the testimony is "based on sufficient facts or data;" "is the product of reliable principles and methods;" and "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  As the Supreme Court found in *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589-93 (1993), the district courts' role under Fed. R. Evid. 702 is to act as "gatekeeper," in order to ensure that the testimony heard by the trier of fact is reliable, relevant, and will assist the trier of fact.  *Id*., *see also Cooper v. Smith &*

*Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2011) (adopting the Supreme Court's "gatekeeping" language). *Daubert* and its progeny put forth a two-prong test for admissibility under the Federal Rules: "(1) the expert testimony must consist of 'scientific knowledge'-that is, the testimony must be supported by appropriate validation; *and* (2) the evidence or testimony must 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995), *citing Daubert*, 509 U.S. at 592 (emphasis in original). The proponent of the expert testimony bears the burden of proving that both prongs are met by a preponderance of the evidence. *Cooper*, 259 F.3d at 199; *Perkins v. United States*, 626 F. Supp. 2d 587, 592 (E.D. Va. 2009).

Under the first prong, the Court is required to conduct a preliminary overview of the reasoning and methodology that underlies the expert's testimony. *Daubert*, 509 U.S. at 592-93. Expert testimony must be based on the expert's specialized knowledge, and not based on mere belief or speculation. *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). The trial court is given "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). To help assess scientific validity, *Daubert* put forth a list of non-exhaustive factors to consider:

> (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper*, 259 F.3d at 199, *citing Daubert*, 509 U.S. at 592-94. These factors have been expanded to apply to all expert testimony. *Kumho Tire Co.*, 526 U.S. at 147. These factors are not definitive, nor should each be given the same weight every time; they are merely tools for the

4

Court to use in its gatekeeping analysis. *Id.* at 150. The Court's primary goal must be "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

Under the second prong, the Court's gatekeeping role requires a determination of whether the expert's reasoning or methodology will assist the trier of fact, or is "relevant to the task at hand." *Daubert*, 509 U.S. at 580. "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986).

A.  **The Testimony of Mia Tecala is to be Excluded**

Defendant argues that Tecala's testimony should be excluded because her opinions do not meet either prong of the above test. Mem. in Supp. of Mot. in Limine to Excl. Expert Testimony 9-12 (hereinafter "Mem. in Supp."), ECF No. 13. Plaintiff argues that Tecala's methodology and opinions have been widely accepted by other courts, and her testimony is relevant because it would assist the trier of fact in understanding the "multifactorial" ways pain can manifest in a grieving person. Pl.'s Opp'n 6-15. She also argues that Tecala's opinion does not diagnose "complicated mourning" or "atypical grief," as Defendant indicates in their brief, but instead diagnosed Major Depressive Disorder, Recurrent. Pl.'s Opp'n 13. Defendant's response argues that because Plaintiff states that Tecala did not diagnose "complicated mourning" or "atypical grief," Tecala should be precluded from arguing that Plaintiff and her daughter suffer from either condition. Def.'s Reply 1-2, ECF No. 15. The response also argues that Tecala should be barred from testifying about the diagnosis of Major Depressive Disorder because Tecala did not

sufficiently prove that "the conduct at issue caused the condition opined upon," and because the testimony would not assist the trier of fact. Def.'s Reply 2, 4-6. This Court agrees with the Defendant.

A medical opinion offered as evidence must consider a patient's prior history when evaluating the patient's diagnosis. *See Perkins v. United States*, 626 F. Supp. 2d 587, 593-94 (E.D. Va. 2009). Tecala acknowledged prior history in her expert report, but did not adequately consider how that history may affect her diagnosis.[1] Tecala Expert Rpt., ECF No. 13-2. While Tecala's diagnosis is consistent with the injury caused by the death of a loved one, consistency is not enough to support her opinion; the Court requires greater standards of proof that the act in question caused the injury complained of by Plaintiff and her daughter. *Fitzgerald v. Manning*, 679 F.2d 341, 349 (4th Cir. 1982). Defendants are not responsible for any pre-existing disability, though they may be responsible for aggravation of a pre-existing condition. *Ragsdale v. Jones*, 202 Va. 278, 282-82 (Va. 1960). An expert must distinguish between a continuation of a pre-existing disability and any injury proximately caused or aggravated by the act in question, *Owens v. Bourns*, 766 F.2d 145, 150 (4th Cir. 1985), and Tecala's report does not do so.

More than not meeting the standards required for scientific rigor, Tecala's opinion does not assist the trier of fact. "Damages in a death case . . . for loss of society can be left to turn mainly upon the good sense and deliberate judgment of the trier . . . and the judge or jury must be allowed to make a reasonable approximation, guided by judgment and practical experience." *Sawyer v. United States*, 465 F. Supp. 282, 292 (E.D. Va. 1978), *citing Sea-Land Serv., Inc. v. Gaudet*, 414 U.S. 573, 590 (1974). Therefore, the touchstone of whether Tecala's opinion should be admissible rests on whether her testimony is unique and non-cumulative, in order to

---

[1] The Court agrees with Defendant that by arguing that "complicated mourning" and "atypical grief" are not part of Tecala's report, Plaintiff abandons any argument in support of these diagnoses. Therefore, the Court will only analyze Tecala's opinion regarding the diagnosis of Major Depressive Disorder, Recurrent.

assist the trier of fact in his determination. *See* Fed. R. Evid. 403 & 702. This Court finds that Tecala's testimony is cumulative and would not assist the trier of fact; as imperfect a calculation as placing a monetary value on the loss of a life is, courts in Virginia have been doing so for years. Tecala's testimony adds little in the way of new information that could not be provided through testimony from the Plaintiff and her daughter. The Court acknowledges the impact and pain caused by Mr. Carter's death, but believes that Plaintiff and her daughter can adequately testify to how the accident affected them.

After reviewing the cases cited by Plaintiff in their opposition brief, the Court agrees with Defendant's assessment that the question of whether to admit grief experts has been left up to the wide discretion of the trial court, and no rule regarding admissibility has emerged from that line of cases. *See Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003) (holding that because the grief expert's testimony was "relevant, if not necessary to the jury, the district court did not abuse its discretion in admitting the evidence."); *El-Meswari*, 785 F.2d at 487 (finding that the district court's exclusion of expert testimony on grief "represented a reasonable exercise of the trial judge's broad discretion under Federal Rule of Evidence 702 to determine that a proposed expert will not significantly assist the arbiter of fact"); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006) (allowing a grief expert to testify in a case that was not being defended by the Republic of Iran, so no one was present to object to the use of a grief expert); *Wilson v. Lund*, 491 P.2d 1287, 1293 (1971) (holding that, in a wrongful death action following the death of plaintiffs' five-year-old son, "for purposes of proving grief, mental anguish, or suffering, expert psychiatric testimony will often be useful and proper, if not absolutely necessary"). Accordingly, based on this Court's belief that Tecala's testimony would be cumulative and would not assist the trier of fact, Defendant's motion to exclude Tecala's

testimony is GRANTED.

**B.     The Testimony of Robert Pachella is to be Excluded**

Dr. Pachella has offered four expert opinions in his Rule 26 report, each addressing "human factors" at play during the accident: first, had Harris's warning signal lights been activated, the accident may have been prevented because the lights would have "put drivers on notice to expect a speed differential;" second, Harris's precaution of checking his rearview mirror before stopping was inadequate to prevent an accident, given the amount of time he was stopped; third, the time interval to avoid an accident, which Pachella calculated to be 1.27 seconds, did not provide Mr. Carter adequate time or distance to react; and fourth, "[i]f the parameters of the assumed scenario in this analysis hold, the proximate cause of the present accident would be the predicament created by the stopped vehicle (Harris) without any attendant warning to approaching traffic." Pachella Expert Rpt. 7, ECF No. 13-3. Defendant argues that the first, second, and fourth opinions "are not based on any scientific or specialized knowledge and they would not assist the trier of fact," and that the third opinion "is based on vague assumptions, speculation and supposition and []is wholly unreliable." Def.'s Mem. in Supp. 12, 14. Plaintiff argues that Pachella, along with other human factors experts, have been used as experts before, and the science Pachella (and others) rely upon for their analyses is identical to what is used to develop traffic safety laws across the United States. Pl.'s Opp'n 15-18. She also argues that the third conclusion is based on clear scientific principles, and that the first, second and fourth conclusions are reliable and relevant. The Court agrees with Defendant.

The first, second, and fourth conclusions, setting aside the issue of whether they were reached in a manner based on scientific or specialized knowledge, simply do not assist the trier of fact. The first opinion, that the accident may have been avoided had Harris activated his

8

warning signals on his vehicle, is an open and obvious conclusion that does not require scientific rigor to prove to the court. Defendants correctly state that the Court does not need an expert "to help it understand that a vehicle's 'emergency' flashers might portend an emergency situation ahead." Def.'s Reply 7. The second opinion goes to an issue that should be left to the trier of fact; Pachella's calculations on how far away Mr. Carter's vehicle may have been at the time Harris stopped his car are based on Harris's testimony that he spoke with the road workers for forty-five seconds to a minute. Although Pachella's scientific formulas to determine how far away Mr. Carter's vehicle may have been when Harris stopped are correct, the determination of when Harris checked his rearview mirror and how long he was stopped are at issue, and must be decided by the trier of fact. Pachella's calculations are correct, but his conclusion goes to the ultimate question and should not be admitted. Additionally, the calculations Pachella performed are the same as those found in Virginia Code § 46.2-880; because these calculations are already memorialized in the Virginia Code, Pachella's are cumulative, and it would be unnecessary to have him testify to them. Pachella's fourth opinion, that the "proximate cause" of the accident was Harris's stopped vehicle, is merely a conclusion derived from his other calculations. "Proximate cause" is a legal conclusion, and the trier of fact should be able to reach that conclusion, or not, without the assistance of Pachella's report.

  The Court agrees with Defendant that Pachella's third opinion is incomplete. Pachella finds that, based on his calculations and the evidence in the record, the amount of time Mr. Carter had to avoid an accident was 1.27 seconds. Pachella Expert Rpt. 5. He then discusses common time intervals that various groups use as a baseline for time necessary to avoid an accident, citing the perception-response time (PRT), used by traffic engineers and accident reconstructionists, with a value of 1.5 seconds; the AASHTP formulation for stopping sight

9

distance, with a value of 2.5 seconds; and a classical study, which cites a value of 3.0 seconds. *Id*. at 5-6. However, Pachella does not give a specific amount of time he believed Mr. Carter would have needed in order to adequately stop in this instance. He discusses a variety of activities that one driving a vehicle could be engaged in that would extend one's time interval (i.e. checking mirrors, which can take 1.0 to 1.5 seconds per mirror), but does not indicate that there is any proof Mr. Carter was engaged in any of these activities. *Id*. at 6.

As Defendant argues, the average driver reaction time memorialized in Virginia Code § 6.2-880, a value of 1.5 seconds, is identical to the value Pachella indicates is typically used by traffic engineers. This value is very close to the 1.27 seconds Pachella indicates was required for Mr. Carter to have prevented the accident. Defendant calculates to mean that Mr. Carter would have missed being able to completely stop by twenty feet. Def.'s Reply 10. However, the accident in question was described as one of "force and violence." Compl. ¶ 1. Pachella's report offers no explanation as to why, given the closeness in value between the two numbers, the accident was not significantly less destructive and damaging. Pachella offers conjecture as to why Mr. Carter's reaction time may have been extended, but he offers no definitive proof. Because Pachella's calculations and conclusion were not definite, they provide no real assistance to the trier of fact. Because of this, Defendant's motion to exclude Pachella's testimony is GRANTED.

### IV. ORDER

Because the opinions of experts Mila Tecala and Dr. Robert Pachella do not pass the rigor required by Fed. R. Evid. 702 and *Daubert*, 509 U.S. at 590-594, this Court hereby GRANTS Defendant's Motion in Limine to Exclude Expert Testimony, as to both experts.

The Clerk of Court shall mail a copy of this Opinion and Order to all counsel of record.

_____/s/_____<br>
Tommy E. Miller<br>
United States Magistrate Judge

Norfolk, Virginia
August 8, 2014